Floyd W. Bybee, #012651
Law Office of Floyd W. Bybee, PLLC
4445 E. Holmes Avenue
Suite 107
Mesa, AZ 85206-5530
Office:  (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

_____ )
Arnold Kalicki,                          )        No.
                                         )
                                         )
        Plaintiff,                       )        COMPLAINT
                                         )
v.                                       )
                                         )
Eastern Asset Management LLC, a          )
New York limited liability company;      )
John P. Nicolia, an individual;          )
Matthew Reynolds, an individual;         )
Kim Andrews, an individual;              )        (Jury Trial Demanded)
                                         )
        Defendants.                      )
                                         )
_____ )

Plaintiff alleges as follows:

I.  Preliminary Statement

1.      Plaintiff brings this action for damages based upon Defendants'

        violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692

        et seq. (hereinafter "FDCPA"), and for state law claims for

        unreasonable debt collection and invasion of privacy.  In the course of

        attempting to collect a debt allegedly owed by Plaintiff, Defendants

1   engaged in deceptive, unfair and abusive debt collection practices in

2   violation of the FDCPA, and took actions which constitute

3   unreasonable debt collection and invasion of privacy under the doctrine

4   enunciated in <u>Fernandez v. United Acceptance Corporation</u>, 610 P.2d

5   461 (Ariz. App. 1980).  Plaintiff seeks to recover actual damages, and

6   statutory damages, punitive damages, as well as reasonable attorney's

7   fees and costs.

8   II.  Statutory Structure of FDCPA

9   2.   Congress passed the FDCPA to eliminate abusive debt collection

10      practices by debt collectors, to insure that those debt collectors who

11      refrain from using abusive debt collection practices are not

12      competitively disadvantaged, and to promote consistent state action to

13      protect consumers against debt collection abuses. FDCPA § 1692.

14  3.   The FDCPA is designed to protect consumers who have been

15      victimized by unscrupulous debt collectors regardless of whether a

16      valid debt exists.  <u>Baker v. G.C. Services Corp.</u>, 677 F.2d 775, 777 (9th

17      Cir. 1982).

18  4.   The FDCPA defines a "consumer" as any natural person obligated or

19      allegedly obligated to pay any debt.  FDCPA § 1692a(3).

20  5.   The FDCPA defines "debt" as any obligation or alleged obligation of a

21      consumer to pay money arising out of a transaction in which the

22      money, property, insurance, or services which are the subject or the

23      transaction are primarily for personal, family, or household purposes.

24      FDCPA § 1692a(5).

25  6.   The FDCPA defines "debt collector' as  any person who uses any

instrumentality of interstate commerce or the mails in any business
the principal purpose of which is the collection  of any debts, or who
regularly collects or attempts to collect, directly or indirectly, debts
owed or due or asserted to be owed or due to another.  FDCPA §
1692a(6).

7.   Any debt collector who fails to comply with the provisions of the
FDCPA is liable for any actual damage sustained; statutory damages
up to $1,000; attorney's fees as determined by the Court and costs of
the action. FDCPA § 1692k.

### III.  Jurisdiction

8.   Jurisdiction of this Court, over this action and the parties herein,
arises under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. §1337.
Venue lies in the Phoenix Division of the District of Arizona as
Plaintiff's claims arose from acts of the Defendants perpetrated
therein.

### IV.  Parties

9.   Plaintiff is an individual and resident of Pinal County, Arizona.

10.   Plaintiff is allegedly obligated to pay a consumer debt.

11.   Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

12.   Defendant Eastern Asset Management LLC (hereinafter "Eastern") is
a limited liability company domiciled in the State of New York.

13.   Eastern regularly collects or attempts to collect debts owed or asserted
to be owed or due another.

14.   Eastern regularly collects or attempts to collect debts which it has
purchased after default.

15.   Eastern is a "debt collector" as defined by FDCPA § 1692a(6).

16.   Defendant John P. Nicolia is an attorney, is a member of the New York Bar, and is not a member of the State Bar of Arizona.

17.   Nicolia employs other attorneys to practice law under his firm name of John Nicolia Law Office.

18.   Nicolia is engaged in the business of collecting debts alleged to be due another.

19.   Nicolia is a "debt collector" as defined by FDCPA § 1692a(6).

20.   Nicolia also employs non-attorneys to assist his firm in the collection of debts alleged to be due another.

21.   Upon information and belief, defendant Kim Andrews is an employee of Eastern Asset.

22.   In the alternative, upon information and belief, Kim Andrews is an employee of attorney Nicolia.

23.   Andrews is engaged in the business of collecting debts alleged to be due another.

24.   Andrews is a "debt collector" as defined by FDCPA § 1692a(6).

25.   Upon information and belief, Matthew Reynolds is an employee of Eastern Asset.

26.   In the alternative, upon information and belief, Reynolds is an employee of attorney Nicolia.

27.   Reynolds is engaged in the business of collecting debts alleged to be due another.

28.   Reynolds is a "debt collector" as defined by FDCPA § 1692a(6).

29.   Nicolia is liable for the acts of his employees and agents within the

1    scope of their authority under the doctrine of respondent superior.

2    30.    Nicolia created the collection policies and procedures utilized by the

3    attorneys and other employees of his law firm.

4    31.    Nicolia manages the daily collection operations of his law firm, and

5    oversees the application by his attorneys and other employees of his

6    collection policies and procedures.

7    32.    At all times relevant herein, Nicolia acted as an agent of Eastern Asset

8    in the collection or attempted collection of an alleged debt from

9    Plaintiff.

10    V.   Factual Allegations

11    33.    In about January 2000, Plaintiff opened a credit card account through

12    Clout Financial.

13    34.    The Clout credit card was used to make purchases for personal, family

14    or household purposes.

15    35.    In about June 2001, Plaintiff fell behind on his payments and

16    defaulted on the Clout credit card account.

17    36.    The clout debt is stale and beyond the applicable statute of limitations

18    for filing suit in Arizona.

19    37.    Plaintiff's Clout credit card account was eventually sold to Eastern

20    Asset Management LLC.

21    38.    On or about March 6, 2008, Eastern telephoned Plaintiff and left a

22    message on his voice mail.

23    39.    In the message, the collector identified herself as Kim Andrews.

24    40.    Andrews stated in the message that the call was concerning a case

25    which is pending to be filed in Maricopa County Courts.

41.   Andrews also stated that the call was in regard to case number 90180-AZ.

42.   This was the first communication from Eastern or Nicolia to Plaintiff concerning the Clout account.

43.   Andrews failed to inform Plaintiff in the March 6, 2008 message that the communication was from a debt collector, that it was an effort to collect a debt, and that any information obtained will be used for the purpose of collecting a debt as required by 15 U.S.C. § 1692e(11).  See Foti v. NCO Financial Services, 424 F.Supp.2d 643, 646 (D.N.Y. 2006).

44.   When Plaintiff heard the message, he believed that Eastern was going to file a lawsuit against him in Arizona.

45.   On or about March 6, 2008, Eastern also telephoned Plaintiff's mother's home and left a voice message for Plaintiff.

46.   The called again identified herself as Kim Andrews, a claims investigator for legal processing firm of Eastern Asset Management.

47.   Andrews also stated in the message that she was calling regarding a complaint that is pending to be filed in Maricopa County against an individual by the name of Arnold Kalicki.

48.   Andrews stated that if Plaintiff intended to rectify this matter out of court that she needed to hear from him or his representing counsel no later than noon Easter Standard Time on Friday, March 7, 2008.

49.   Because the message was left on Plaintiff's mother's home phone, she heard the message in its entirety, and relayed it to Plaintiff.

50.   Plaintiff returned the call to Andrews who then identified herself as the secretary to the lawyer.

51. Andrews transferred Plaintiff's call to Defendant Reynolds, "the lawyer in Arizona who is going to file the suit."

52. Reynolds is not licensed as an attorney with the State Bar of Arizona.

53. Reynolds told Plaintiff that he would be filing suit on behalf of John Nicolia and that Nicolia had a network of attorneys across the country.

54. Reynolds told Plaintiff that his credit was good and that the only outstanding debt was the Clout debt.  He also told Plaintiff that his credit score would shoot up, and that the only thing he needed to do to avoid the lawsuit was to give them a check for $2,131.

55. When Plaintiff explained to Reynolds that he did not have the money, Reynolds told him that he could postpone the lawsuit until Friday, March 14, 2008, but that Plaintiff would have to give him a post-dated check over the phone right then, and then suggested that Plaintiff go get a loan to cover the check.

56. Reynolds to Plaintiff if they went to court that they would put a lien on his home and also garnish his wages.

57. Reynolds also told Plaintiff that he needed to go to fastloan.com to get a loan to cover the check.

58. Reynolds then told Plaintiff that Defendants did not have to call him, but that is was merely a courtesy call because Plaintiff's credit is so good and they wanted to give Plaintiff the opportunity to fix it so his credit would not get ruined.

59. Reynolds told Plaintiff that they would not try to cash the check unless they heard from him.

60. Reynold then told Plaintiff that if suit was filed and he lost, Plaintiff

1    would be paying an additional $5,000 to $6,000 in attorney's fees.

2  61.  When Plaintiff told Reynolds that he did not know him or Eastern and

3       was hesitant to give a check by phone, Reynolds transferred Plaintiff

4       back to Andrews.

5  62.  Again Plaintiff explained to Andrews that he was uncomfortable giving

6       a check by phone.

7  63.  Andrews then threatened Plaintiff stating that either you give us the

8       post-dated check now, or we file suit today.

9  64.  Under the duress and the threat of a lawsuit to be filed that day,

10      Plaintiff reluctantly gave Andrews the information for a post-dated

11      check in the amount of $2,131.

12  65.  Andrews told Plaintiff that she would fax him a letter identifying the

13      company and confirming that the $2,131 check would settle the claim.

14  66.  On March 11, 2008, Eastern faxed Plaintiff a letter concerning the

15      Clout debt.  (A copy of the March 11, 2008 letter is attached hereto as

16      Exhibit A.)

17  67.  The March 11, 2008 was the first written communication Eastern sent

18      to Plaintiff concerning the Clout debt.

19  68.  In the March 11, 2008 letter, Eastern states that "If you do not adhere

20      to the terms of the settlement agreement we will declare the entire

21      balance due and pursue accordingly. If judgment has been rendered,

22      that information will be updated with the proper jurisdiction and

23      county."

24  69.  Easter also stated in its March 11, 2008 letter that "Please note that

25      our legal counsel, John Nicolia Esq., may review the status of your

1        particular case at anytime."

2    70.  Because of the imminent threats of legal action by Defendants,

3        Plaintiff sought legal assistance and eventually retained counsel.

4    71.  On March 13, 2008, Plaintiff's counsel faxed a letter to Eastern at 5:34

5        p.m. Arizona time stating that Plaintiff was now represented by

6        counsel and that all further communication was to be though counsel.

7    72.  Subsequent to receiving the March 13, 2008 faxed letter, Eastern

8        called Plaintiff on March 18, 2008 concerning the Clout debt.

9    73.  On March 19, 2008 Eastern faxed a letter to Plaintiff through his

10       attorney with wording identical to the March 11, 2008 letter.

11   74.  As a result of Defendants' actions, Plaintiff had to close his bank

12       account to prevent Eastern from taking funds from his checking

13       account.

14   75.  As a result of Defendants' outrageous actions as outlined above,

15       Plaintiff has suffered damages including, but not limited to, loss from

16       work, emotional distress, embarrassment, humiliation, sleeplessness,

17       headaches, inability to concentrate, depression, upset stomach, and

18       other severe emotional distress.

19   76.  Defendants' actions taken here were intentional, willful, and in gross

20       or reckless disregard of Plaintiff's rights and part of their persistent

21       and routine practice of debt collection.

22   77.  In the alternative, Defendants' actions were negligent.

23                      VI.  Causes of Action

24                   a.  Fair Debt Collection Practices Act

25   78.  Plaintiff repeats, realleges, and incorporates by reference the foregoing

- 9 -

1      paragraphs.

2   79.   Defendants' violations of the FDCPA include, but are not necessarily

3         limited to, 15 U.S.C. §§ 1692c(a)(2), 1692c(b), 1692d, 1692e,

4         1692e(2)(A), 1692e(2)(B), 1692e(3), 1692e(4), 1692e(5), 1692e(10),

5         1692e(11), 1692e(14), 1692f, 1692f(1), and 1692g.

6   80.   As a direct result and proximate cause of Defendants' actions in

7         violation of the FDCPA, Plaintiff has suffered actual damages.

8                            b.  Invasion of Privacy

9   81.   Plaintiff repeats, realleges, and incorporates by reference the foregoing

10        paragraphs.

11  82.   Defendants' actions constitute unreasonable debt collection and an

12        invasion of Plaintiff's privacy pursuant to the doctrine enunciated in

13        <u>Fernandez v. United Acceptance Corporation</u>, 610 P.2d 461 (Ariz. App.

14        1980).

15  83.   As a direct result and proximate cause of Defendants' actions, Plaintiff

16        has suffered actual damages for which Defendants are liable.

17                        VII.  Demand for Jury Trial

18        Plaintiff hereby demands a jury trial on all issues so triable.

19                        VIII.  Prayer for Relief

20        WHEREFORE, Plaintiff requests that judgment be entered against

21  Defendants for:

22        a)    Statutory damages pursuant to §1692k;

23        b)    Actual damages in an amount to be determined by trial;

24        c)    Punitive damages in an amount to be determined at trial;

25        d)    Costs and reasonable attorney's fees pursuant to §1692k; and

1      e)      Such other relief as may be just and proper.

2

3      DATED   April 2, 2008   .

4

5
                                        s/ Floyd W. Bybee
6                                       Floyd W. Bybee, #012651
                                        Law Office of Floyd W. Bybee, PLLC
7                                       4445 E. Holmes Avenue
                                        Suite 107
8                                       Mesa, AZ 85206-5530
                                        Office:  (480) 756-8822
9                                       Fax: (480) 302-4186
                                        floyd@bybeelaw.com
10
                                        Attorney for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25